**REGIONAL SALES AGENCY, INC., a Utah corporation, Plaintiff, Appellant, and Cross–Respondent,**

v.

**Roland W. REICHERT, Defendant, Respondent, and Cross–Appellant.**

**No. 880246–CA.**

Court of Appeals of Utah.

Nov. 24, 1989.

Bryce E. Roe, Salt Lake City, for plaintiff, appellant and cross-respondent.

E.H. Fankhauser, Salt Lake City, for defendant, respondent and cross-appellant.

Before BENCH, BILLINGS and GREENWOOD, JJ.

## OPINION

BILLINGS, Judge:

Regional Sales Agency, Inc. ("Regional") appeals from a jury verdict awarding it $792.18 in damages as a result of cross-appellant Roland Reichert's ("Mr. Reichert") breach of a non-competition agreement with Regional, his former employer. Regional also appeals the trial court's reduction of its attorney fees which Regional claims were provided for by the parties' written contract and reasonably incurred in prosecuting this action.

Mr. Reichert cross-appeals the court's denial of his attempt to amend his counterclaim to add a claim for unpaid commissions and salary. We reverse and remand in part, and affirm in part.

Since the late 1950s, Edward and Helen Kiholm have operated a small family business which acted as a manufacturer's representative in designated territories of the mountain west. The business earned commissions from its principal manufacturers by selling their goods to retailers.

In 1977, the Kiholms hired Mr. Reichert as an independent contractor to handle outside sales. If the relationship was satisfactory, the Kiholms intended to retire in ten years with Mr. Reichert taking over the business. Mr. Reichert worked for the Kiholms until 1978 when the business was incorporated as Regional.

In 1979, Mr. Reichert entered into a written employment contract with Regional. The employment contract contains a non-

competition clause restricting Mr. Reichert from representing manufacturers represented by Regional or competing with Regional's manufacturers for a three-year period after the termination of his relationship with Regional. The contract also contains the following damage and attorney fees provisions central to this appeal:

> In the event Agent breaches the provisions of this [non-competition] paragraph, all proceeds and benefits derived therefrom by Agent shall be received and held by him in trust for Company, and shall be paid to Company upon demand by Company.
>
> . . . .
>
> Agent further agrees to pay Company its reasonable attorneys' fees and costs which are incurred as a result of his breach of any provision herein.

On April 30, 1987, the day before a non-jury trial was scheduled before Judge Leonard H. Russon and more than three years after Mr. Reichert's original answer and counterclaim had been filed, Mr. Reichert filed an amendment to his counterclaim. In this amendment, Mr. Reichert claimed Regional owed him commissions and salary from 1977 through 1983. Judge Russon struck the amendment. On May 26, 1987, after Judge Russon had recused himself at Mr. Reichert's request, and a mistrial had been granted, Mr. Reichert filed a written motion to amend his counterclaim again asserting a claim for commissions and wages. The motion was denied by Judge Pat B. Brian.

At trial it was undisputed that after Mr. Reichert left Regional in 1983, he continued to represent three manufacturers whom he had previously represented as a salesman for Regional: Artfaire, Carousel Party Favors, Inc., and Atlas Textiles. He received commissions of $42,176.09 from these manufacturers in the three-year period after his relationship with Regional ended.

In defense of his actions, Mr. Reichert claimed the written agreement of August 13, 1979, was never intended to have any force or effect. He insisted that Regional represented that it was merely "window dressing" to protect Regional in case of a tax audit.

The jury found the 1979 employment agreement was enforceable and neither party has appealed this issue.[1] However, the jury only awarded Regional $792.18 in damages.

The parties stipulated that evidence supporting reasonable attorney fees as provided for by the employment agreement would be submitted to the judge by affidavit following the jury verdict. Counsel for Regional submitted a lengthy affidavit detailing $26,740.50 in fees. No opposing affidavit was submitted by Mr. Reichert. The court, without giving any explanation, awarded Regional $7,500 in fees.

The issues we address in this appeal are: (1) whether Regional should have a new trial on the issue of damages; (2) whether the judge abused his discretion in reducing Regional's attorney fees; and (3) whether the trial court erred in denying Mr. Reichert's motion to amend his counterclaim to add a claim for unpaid commissions and salary.

## I. DAMAGES

Regional challenges the jury's damage award claiming it is contrary to the unambiguous terms of the parties' non-competition agreement which provides a formula to calculate damages. Regional claims the inadequate damage award is a result of the trial court improperly instructing the jury on the issue of damages.

The provisions of the 1979 agreement dealing with damages at issue on appeal provide:

---

1. In its brief, Regional complains about several issues being submitted to the jury and the court's decision not to direct a verdict. Specifically, Regional claims (1) there was insufficient evidence to submit to the jury the question of whether the 1979 agreement was intended to have legal effect, and (2) the court should have directed a verdict in favor of the plaintiff on the issue of liability. However, since the jury decided the issue of enforceability of the contract in Regional's favor, we do not consider these arguments. Whatever error may have occurred was harmless.

At no time during the term of this agreement, or within a period of three years following the termination of Agent's employment shall Agent [Reichert], for himself or in behalf of any other person, firm, partnership or corporation (other than the Company [Regional]) represent any Principal of company for the purpose of selling any of their products.

....

Because a breach of this provision will result in irreparable damages which are difficult to measure ... Company at its election shall be entitled to an injunction restraining Agent from breaching the terms of this provision.

In the event Agent breaches the provisions of this paragraph, all proceeds and benefits derived therefrom from agent shall be received and held by him in trust for company, and shall be paid to company upon demand by company.

In the first instance, the determination of whether or not a contract is ambiguous is a question of law. *Wilburn v. Interstate Elec.*, 748 P.2d 582, 585 (Utah Ct.App. 1988). If the trial court finds the agreement unambiguous and interprets its meaning by examining only the words of the agreement, this interpretation also presents a question of law. *Kimball v. Campbell*, 699 P.2d 714, 716 (Utah 1985). We thus "accord [the trial court's] construction no particular weight, reviewing its action under a correctness standard." *Id.* The trial court's selection of jury instructions interpreting contractual language also presents a question of law. "Therefore, we grant no particular deference to the trial court's ruling." *Ramon v. Farr*, 770 P.2d 131, 133 (Utah 1989).

"Where questions arise in the interpretation of an agreement, the first source of inquiry is within the document itself. It should be looked at in its entirety and in accordance with its purpose. All of its parts should be given effect insofar as that is possible." *Big Cottonwood Tanner Ditch Co. v. Salt Lake City*, 740 P.2d 1357, 1359 (Utah Ct.App.1987); *see also Larra-*

*bee v. Royal Dairy Prods. Co.*, 614 P.2d 160, 163 (Utah 1980).

We find the relevant non-competition and liquidated damage provisions unambiguously provide that Mr. Reichert was not to represent any principal of Regional's for three years following his termination. Mr. Reichert admitted at trial that during his tenure with Regional, the company represented Carousel Products, Atlas Textiles, and Artfaire, three of Regional's former principals as defined by the parties' contract. The agreement further provides that if Mr. Reichert does represent any of Regional's principals, then he will hold all commissions earned as a result of this prohibited representation in trust for Regional. Regional relied on this contractual language and introduced evidence that Mr. Reichert collected $42,176.09 in commissions from Carousel, Atlas, and Artfaire during the three years following his termination.

Regional requested the following instruction reflecting its theory that the contract provided a formula for determining damages based on these earnings in violation of the contract:

Plaintiff is entitled to recover, in addition to any other damages it may prove by a preponderance of the evidence, all commissions received by defendant during the years 1984, 1985, and 1986 from Artfaire, Carousel Party Favors, Inc., and Atlas Textiles.

This instruction was refused by the trial court. The court substituted the following instruction on damages:

Where the parties agree on a method of establishing damages for breach of contract, the agreement is enforceable if it is designed to provide fair compensation for the breach, based upon a reasonable relation to actual damages.

Regional claims the instruction given is contrary to Utah law. In *Young Electric Sign Co. v. United Standard West, Inc.*, 755 P.2d 162 (Utah 1988), the Utah Supreme Court considered a liquidated damage provision in a contract. The court reversed the trial court which had required the plaintiff to prove actual damages to

validate the liquidated damage provision. The court stated:

> [A]s a general rule, parties to a contract may agree to liquidated damages in the case of a breach, and such agreements are enforceable if the amount of liquidated damages agreed to is not disproportionate to the possible compensatory damages and does not constitute a forfeiture or a penalty. Reasonable liquidated damages provisions may reduce the cost of litigation by obviating the expense entailed in proving actual damages. If a liquidated damages provision is enforceable, a plaintiff need not prove actual damages. The burden is on the party who would avoid a liquidated damages provision to prove that no damages were suffered or that there is no reasonable relationship between compensatory and liquidated damages.

*Id.* at 164 (citations omitted); *see also Robbins v. Finlay*, 645 P.2d 623, 627 (Utah 1982).

The instruction given by the trial court in this case, in effect, put the burden on Regional to establish that the liquidated damages provision of the agreement provided fair compensation for Mr. Reichert's breach and the resulting damages awarded were reasonably related to the actual damages suffered by Regional. This is contrary to Utah law.

Even if the instruction could be read to put the burden on Mr. Reichert to show no damages were suffered or there was no reasonable relationship between the actual damages Regional suffered and the $42,176.09 it would collect under the agreement, there was insufficient evidence introduced below to enable the jury to find either proposition. Mr. Reichert did not establish that the $42,176.09 in commissions awarded under the liquidated damage provision would be disproportionate to the amount of damage Regional suffered by its loss of commissions from three of its former principals. On appeal, Mr. Reichert does not point to any evidence offered be-

low to show that the liquidated damages provision was unreasonable nor does he compare the liquidated damages to the actual damages suffered by Regional.[2]

We cannot say that a provision which returns the commissions lost for a three-year period as a result of the breach of a non-competition agreement is unreasonable as a matter of law. Although this liquidated damages formula does not reflect expenses incurred by Mr. Reichert in earning the commissions, it is limited to three years. Regional's loss of profits as a result of its permanent loss of three of its principals to Mr. Reichert could certainly have exceeded a three-year period and thus the liquidated damages provided by application of the contractual provision.

We believe the jury verdict was a result of improper instruction and the admission of evidence on the issue of commissions which Mr. Reichert claimed were owing him. This testimony was received over objection and the trial court limited its application to the issue of the enforceability of the 1979 agreement. Nevertheless, this evidence undoubtedly further confused the jury. This evidence on unpaid commissions would be inadmissible on retrial on the limited issue of damages under the contractual damages provision.

Based upon the foregoing, we reverse and remand for a new trial on the issue of damages consistent with the legal principles stated herein.

## II. ATTORNEY FEES

In Utah, litigants can recover attorney fees only if they are authorized by statute or provided for by contract. *Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988) (citing *Golden Key Realty, Inc. v. Mantas*, 699 P.2d 730, 734 (Utah 1985); *Turtle Management, Inc. v. Haggis Management, Inc.*, 645 P.2d 667, 671 (Utah 1982)); *see* Utah Code Ann. § 78–27–56 (1987). Moreover, "[i]f provided for by

---

**2.** The only evidence alluded to by Mr. Reichert is evidence establishing certain unpaid commissions. This evidence was not admitted on the issue of damages but was specifically restricted to the issue of the enforceability of the 1979 contract, and is legally irrelevant to the damages provision at issue.

contract, the award of attorney fees is allowed only in accordance with the terms of the contract." *Dixie State Bank,* 764 P.2d at 988 (citing *Trayner v. Cushing,* 688 P.2d 856, 858 (Utah 1984)); *see also Turtle Management, Inc.,* 645 P.2d at 671; *L & M Corp. v. Loader,* 688 P.2d 448, 450 (Utah 1984).

In the present case, the contract of the parties provides:

> Agent [Reichert] ... agrees to pay Company [Regional] its reasonable attorney's fees and costs which are incurred as a result of his breach of any provision herein.

The parties stipulated at trial that, if the jury found for Regional on the enforceability of the contract, the court would determine the appropriate award of attorney fees. Following trial, counsel for Regional submitted an affidavit supporting his fees detailed by a computer accounting of the hours worked and tasks accomplished on Regional's behalf. Regional claimed it had incurred a total of $26,740.50 in attorney fees and costs of $610.46. Counsel for Regional also testified that the fees were reasonable considering the nature and extent of the work performed. Mr. Reichert made no objection to the affidavit nor did he offer opposing testimony on the issue of reasonable attorney fees. The court made no findings of fact nor conclusions of law on the issue of attorney fees but simply entered an order awarding $7,500 in fees to Regional.

It is generally within the trial court's discretion to determine the reasonable attorney fees which should be awarded and we will not overturn the award absent an abuse of discretion. *See Dixie State Bank,* 764 P.2d at 988; *Jenkins v. Bailey,* 676 P.2d 391, 393 (Utah 1984); *Turtle Management, Inc.,* 645 P.2d at 671. We "will presume that the discretion of the trial court was properly exercised unless the record clearly shows the contrary." *Goddard v. Hickman,* 685 P.2d 530, 534–35 (Utah 1984) (quoting *State ex rel. Road Comm'n v. General Oil Co.,* 22 Utah 2d 60, 62, 448 P.2d 718, 719 (1968)). *See also Donohue v. Intermountain Health Care,*

*Inc.,* 748 P.2d 1067, 1068 (Utah 1987). However, where parties to a contract agree that attorney fees will be awarded, those attorney fees provisions should ordinarily be enforced by the court. *Cobabe v. Crawford,* 780 P.2d 834 (Ct.App.1989).

An award of attorney fees must be based on evidence in the record which supports the award. *See Bangerter v. Poulton,* 663 P.2d 100, 103 (Utah 1983). However, a trial court is not compelled to accept the self-serving testimony of a party requesting attorney fees even if there is no opposing testimony. *See Beckstrom v. Beckstrom,* 578 P.2d 520, 524 (Utah 1978). A court can evaluate the fees requested and determine a lesser amount is reasonable under the circumstances. *See Dixie State Bank,* 764 P.2d at 989. Several practical factors to consider in determining a reasonable attorney fee are

> the difficulty of the litigation, the efficiency of the attorneys in presenting the case, the reasonableness of the number of hours spent on the case, the fee customarily charged in the locality for similar services, the amount involved in the case and the result attained, and the expertise and experience of the attorneys involved.

*Cabrera v. Cottrell,* 694 P.2d 622, 625 (Utah 1985); *see also Dixie State Bank,* 764 P.2d at 989.

We have consistently encouraged trial courts to make findings to explain the factors which they considered relevant in arriving at an attorney fee award. *See, e.g., Cabrera,* 694 P.2d at 624. Findings are particularly important when the evidence on attorney fees is in dispute or the trial court has reduced the attorney fees from those requested and supported by undisputed evidence. *Id.*

We have recently held that a trial court abuses its discretion in awarding less than the amount of attorney fees requested when there is adequate and uncontroverted evidence in the record to support those fees unless the court offers an explanation for the reduction considering the factors previously discussed. *See Martindale v. Adams,* 777 P.2d 514, 518 (Utah Ct.App.

1989); *see also Dixie State Bank*, 764 P.2d at 987–91.

In this case, the trial court substantially reduced the attorney fees requested from $26,740.50 to $7,500 even though the record contained undisputed testimony delineating the services performed and that the rate and time expended were reasonable and necessary. The trial court made no findings or explanation for its sua sponte reduction.

Mr. Reichert argues that the court's reduction of fees was proper because the fees were incurred as a result of Regional's unsuccessful attempt to secure an injunction. Unfortunately, the trial court made no such finding. Because the trial court gave no explanation for its reduction of attorney fees, we reverse the award and remand for the trial court to enter the amount supported by the undisputed evidence or alternatively to make findings to support the reduction consistent with the authority cited herein.

## III. DENIAL OF MR. REICHERT'S MOTION TO AMEND

On April 30, 1987, three years after commencement of the litigation and following extensive discovery, Mr. Reichert filed an "Amendment to Counterclaim" seeking judgment against Regional for "all commissions, compensation, wages and salary found to be due and owing" for the years 1977 through 1983. A non-jury trial was scheduled for the next day. The trial court struck the attempted amendment. After the trial commenced, Mr. Reichert moved to recuse the assigned trial judge. Judge Russon declared a mistrial and the case was reassigned to Judge Brian who denied a subsequent, identical motion to amend filed by Mr. Reichert. The propriety of the trial court's denial of Mr. Reichert's amendment must be measured against Utah Rules of Civil Procedure 15(a), which states:

A party may amend his pleading once as a matter of course any time before a responsive pleading is permitted and the action has not been placed upon the trial calendar ... otherwise, a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires....

The decision to allow an amendment is discretionary with the trial court as part of its duty to manage proceedings below. We will not disturb a trial court's decision absent an abuse of discretion. *See Girard v. Appleby*, 660 P.2d 245, 248 (Utah 1983); *Chadwick v. Nielsen*, 763 P.2d 817, 820 (Utah Ct.App.1988); *Tripp v. Vaughn*, 746 P.2d 794, 797 (Utah Ct.App.1987).

In analyzing the grant or denial of a motion to amend, Utah courts have focused on three factors: the timeliness of the motion; the justification given by the movant for the delay; and the resulting prejudice to the responding party. *See Tripp*, 746 P.2d at 797.

Appellate courts have upheld a trial court's denial of a motion to amend where the amendment is sought late in the course of the litigation, where there is no adequate explanation for the delay, and where the movant was aware of the facts underlying the proposed amendment long before its filing. *Imperial Enter., Inc. v. Fireman's Fund Ins.*, 535 F.2d 287, 293 (5th Cir.1976); *Girard*, 660 P.2d at 248; *Westley v. Farmer's Ins. Exch.*, 663 P.2d 93, 94 (Utah 1983).

Rule 13(e) of the Utah Rules of Civil Procedure focuses on the moving party's responsibility to articulate reasons for the delay: "When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment." Without such justification,

[t]he amendment of pleadings on the eve of trial causes great disruption to the legal process and is unfair to an opponent who has conducted discovery, fully prepared the case, and scheduled trial time based on the moving party's prior pleadings.

*Chadwick*, 763 P.2d at 820.

Courts have also found it important when denying a motion to amend that new

causes of action or issues are added with consequent disadvantage to the responding party. *Girard,* 660 P.2d at 248.

In his brief, Mr. Reichert alleges the trial court abused its discretion in refusing to allow his amendment because the issues presented did not substantially vary the issues and evidence already involved in the case. We disagree. The issues raised by Regional's complaint were limited to the validity of the parties' contract, particularly its non-competition clause and Mr. Reichert's alleged breach of the non-competition clause. The counterclaim interjected the issue of commissions due and paid to Mr. Reichert for a six-year period involving an analysis and accounting of sales figures not previously at issue.

Mr. Reichert made his first attempt to amend his counterclaim on the day before the trial was scheduled to commence and more than three years after his original answer was filed. Mr. Reichert offered no justification for his delay in asserting his claim for unpaid commissions.[3]

Thus, Mr. Reichert, on the eve of trial, attempted to insert new issues in the case without giving any adequate explanation for his delay. We believe this amendment would have prejudiced Regional. On the facts before us and under the authority previously discussed, we find the trial court did not abuse its discretion in denying the amendment.

In summary, we reverse and remand on the issue of damages and attorney fees, but affirm the trial court's denial of Mr. Reichert's attempt to amend his counterclaim.

BENCH and GREENWOOD, JJ., concur.

---

3. Later in the proceedings, Mr. Reichert again tried to add his claim for unpaid commissions by filing a Motion to Amend his counterclaim. This motion, also made without justification, violated Utah Code Ann. § 78–7–19 (1989), which provides:

If an application for an order, made to a judge of a court in which the action or proceeding is pending, is refused in whole or in part, or is granted conditionally, no subsequent application for the same order can be made to any other judge....